**STATE of Minnesota,
Petitioner, Appellant,**

v.

**William R. SHAMP, Respondent.**

**No. C0-87-1494.**

Supreme Court of Minnesota.

Aug. 5, 1988.

Hubert H. Humphrey, III, Atty. Gen., William F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Michael Kirk, Otter Tail County Atty., Fergus Falls, for petitioner, appellant.

C. Paul Jones, State Public Defender, Melissa Sheridan, Asst. State Public Defender, Minneapolis, for respondent.

AMDAHL, Chief Justice.

Defendant, William R. Shamp, was convicted of a charge of criminal sexual conduct in the first degree, Minn.Stat. § 609.342, subd. 1(h)(v) (1986) (sexual penetration of complainant under 16 years old by one having a significant relationship to complainant where the sexual abuse of the complainant involved "multiple acts committed over an extended period of time"), and was sentenced to a 54–month prison term. The court of appeals awarded defendant a new trial because the trial court failed to caution the jury that it could not base the conviction on acts of abuse occurring outside the period of the statute of limitations. *State v. Shamp,* 422 N.W.2d 736 (Minn.App.1988). We reverse the court of appeals and reinstate the conviction.

The state's evidence against defendant was overwhelming. The victim, S., who is one of defendant's sisters, was 15 at the time of trial. Defendant is 19 years her senior. Although married and living elsewhere, defendant visited the family dairy farm frequently on weekends. Defendant was in a position of authority over S., frequently disciplining her. The abuse, consisting first of fondling, started in 1978 or 1979, when S. was 7. In 1980, when S. was 8½, defendant began forcing her to commit fellatio. Starting in 1982, when S. was 11, defendant began having sexual intercourse with her. S. testified that it happened every time he visited the farm, "more times than I can count," and that it occurred in various places, including in the barn, in the hog barn, in other buildings, and outside. She testified specifically to three of the instances of sexual abuse which particularly stood out in her mind: the first time it happened, in 1982, in the feed room in the barn; an incident in 1985 during the deer hunting season when defendant forced her to the ground and put a large bullet in her vagina, telling her he would shoot her in the vagina if she ever told anyone; and the last act of sexual abuse, in June 1986, when defendant tried to have intercourse with her in the milk house but the attempt was interrupted by a sister walking in on them.

The abuse came to light in July 1986, when S. and defendant's daughter, 13–year–old M., were talking about defendant. They revealed to each other and to S.'s 29–year–old sister, R., that defendant had been abusing them. R. contacted the welfare authorities, who referred the matter to the police for investigation.

At defendant's trial in Otter Tail County on the charge of abusing S.[1] the state's evidence included: (a) S.'s testimony, summarized above; (b) *Spreigl* testimony by M. concerning defendant's abuse of her; and (c) testimony by Lieutenant Richard Kangas of Anoka County relating to defendant's admitting—during a custodial interrogation of him after he waived his *Miranda* rights—that he had sexually abused S. and

---

1. Defendant was also prosecuted in Anoka County for sexually abusing M. He was convicted there of criminal sexual conduct in the first degree and was sentenced to a 45–month prison term, which is running concurrently with the term in this case. That conviction was recently affirmed by the court of appeals in *State v. Shamp,* 422 N.W.2d 520 (Minn.App. 1988), *pet. for rev. denied* (Minn.1988).

M. Defendant's parents, his wife, and some of his siblings testified on his behalf, basically saying that the abuse could not have happened and that S. and M. were liars who had fabricated the charges in order to get revenge on defendant for disciplining them. Defendant did not testify.

The statute of limitations that was in effect when defendant first began abusing S. was a 3–year statute of limitations. Minn.Stat. § 628.26 (1980). In 1982 the legislature changed the statute of limitations to 7 years for prosecutions involving sexual abuse of family members; this change applied to acts occurring on or after August 1, 1982. 1982 Minn.Laws, ch. 432, § 1. The prosecution in this case was commenced on July 24, 1986; it charged defendant under section 609.342, subd. 1(h)(v) with multiple acts of sexual abuse occurring between 1978 and June 29, 1986. As the court of appeals' opinion makes clear, acts occurring before August 1, 1982, had to be charged within 3 years, absent some tolling of the statute, whereas acts occurring after August 1, 1982, were covered by the new 7–year statute of limitations. Defendant's trial attorney apparently did not understand this. In a motion to dismiss, he argued that the applicable statute of limitations was "7 years in this instance" and that the complaint was defective in that it "incorporates activity 8 years ago." The trial court responded by saying that if it developed that some of the multiple acts occurred outside the 7–year statutory period, "that can be taken care of with a cautionary instruction."

That basically ended the matter of the statute of limitations. Defense counsel in his closing argument did not argue to the jury the issue of the alleged conduct being outside the statute of limitations. Further,

when it was time to formally request instructions or object to instructions, defense counsel said nothing about the statute of limitations. The trial court instructed the jury that the "fourth and final element is that the defendant's acts took place between the year 1978 through June 29th, 1986 at Elmo Township in Otter Tail County."

Defense counsel later made a post-trial motion claiming that the trial court had denied a request for an instruction concerning the statute of limitations issue. Interstingly, the motion states, without distinguishing between acts occurring before August 1, 1982, and those occurring after, that the statute of limitations was 7 years. The trial court denied the motion.

We believe that the court of appeals' decision is wrong. Defendant, by conceding that the applicable statute of limitations was 7 years and by not requesting a cautionary instruction at the proper time, is deemed to have forfeited his right to complain about the trial court's failure to caution the jury about the conduct on which it could base a conviction. Under the plain error rule, defendant could obtain relief from the trial court's failure to give such a cautionary instruction only if the trial court's failure seriously affected substantial rights and only if the error was prejudicial error. *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988).[2]

The court of appeals based its conclusion that the lack of a cautionary instruction was prejudicial on the fact that "it cannot be said with certainty that the jury did not base its finding of guilt partially on the 1978 or 1979 incident." *State v. Shamp*, 422 N.W.2d 736, 739 (Minn.App.1988).[3] In

---

**2.** Harmless error analysis certainly applies in this context, since it applies even when the trial court in effect improperly directs a verdict on a particular issue. *See, e.g., State v. Larson*, 358 N.W.2d 668, 672 (Minn.1984); *State v. Wick*, 331 N.W.2d 769, 772 (Minn.1983); *State v. Carlson*, 268 N.W.2d 553, 560–61 (Minn.1978).

**3.** The court of appeals also based the reversal on its view that an affirmance in this case would be inconsistent with the result in *State v. Anderson*, 394 N.W.2d 813 (Minn.App.1986), *pet.*

*for rev. denied* (Minn.1986). In *Anderson* the defendant was convicted of multiple acts of sexual abuse of his cousin between 1977 and 1984. The court of appeals granted the defendant a new trial because he may have been convicted on the basis of conduct that occurred before the defendant turned 14 in 1980, *i.e.,* before he was legally capable of committing a crime. It is true that we denied the petition for review in *Anderson.* However, as we have cautioned before, a denial of a petition for review should not be interpreted to mean that we en-

fact, there was not just one incident in 1978 or one incident in 1979. That was when the "mere" contact and fondling began. That behavior simply started in 1978 and was ongoing, occurring, as the victim put it, more times than she could count. The fellatio started when the victim was 8½, which meant that it started in 1980; it too was ongoing and occurred more times than the victim could count. The sexual intercourse started in 1982, when the victim was 11, and was also ongoing, occurring more times than the victim could count. The three specific instances that the victim recounted in some detail were the first act of intercourse in 1982, the bullet incident in 1985, and the last act of abuse. The first of the specific acts of sexual intercourse testified to by the victim may have occurred before the 7–year statute of limitations went into effect on August 1, 1982, and—since the prosecution was not commenced until July 24, 1986—may have been outside the statute of limitations. But it is clear that the bullet incident and the last incident referred to—as well as many acts of intercourse (more than the victim could count)—occurred after August 1, 1982, *i.e.*, after the 7–year statute of limitations became effective. In our opinion, there is no reasonable likelihood that the jury somehow discredited the victim's testimony relating to abuse occurring after August 1, 1982, but credited her testimony concerning abuse occurring before August 1, 1982. Under the circumstances, we do not believe that the lack of a cautionary instruction was prejudicial.[4]

In conclusion, we reverse the court of appeals and reinstate the judgment of conviction.

Reversed and judgment of conviction reinstated.

dorse either the reasoning of the court of appeals or the result. For a full explanation, *see Murphy v. Milbank Mut. Ins. Co.,* 388 N.W.2d 732, 738–39 (Minn.1986).

**4.** Indeed, under section 609.04, a defendant may be convicted of a necessarily included offense of a charged offense. Usually the necessarily included offense is a lesser offense, but section 609.342 is a curious statute in that under subdivision 1(g) it was criminal sexual conduct in the first degree for defendant to have sexual inter-

course with his sister just once whereas under subdivision 1(h)(v) it was criminal sexual conduct in the first degree for him to have sexual intercourse with her and to engage in the multiple acts of sexual abuse over an extended period of time. In other words, if the jury believed that one act of sexual intercourse occurred after August 1, 1982, then defendant's conviction of criminal sexual conduct in the first degree under subdivision 1(g) would have been justified.