**In the Matter of the WELFARE OF K.A.S.**

**No. CX–98–42.**

Court of Appeals of Minnesota.

Oct. 6, 1998.

---

Hubert H. Humphrey III, Attorney General, St. Paul; and Alan L. Mitchell, St. Louis County Attorney, Leslie E. Beiers, Assistant County Attorney, Duluth, (for respondent).

Leslie J. Rosenberg, Special Assistant State Public Defender, Minneapolis, (for appellant).

Considered and decided by HUSPENI, P.J., RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Appellant challenges the district court's jurisdiction to enter adult convictions and adult sentences pursuant to an Extended Juvenile Jurisdiction prosecution after the district court found that it could not determine whether appellant was 14 years old at the time of the offenses. Appellant also asserts that the district court erred by admitting a videotaped interview and expert testimony into evidence. We affirm the juvenile adjudication and disposition, reverse the adult convictions and vacate the stayed adult sentences.

## FACTS

Until 1994, appellant K.A.S.'s parents provided daycare in their home for several children, including K.C. (d.o.b.9/28/86), the complainant. Sometime in 1993 or 1994, K.C. stopped going to K.A.S.'s parents' house for daycare. In December 1996, K.C. told her mother that K.A.S. (d.o.b.9/5/79) and his older brother had sexually molested her. K.C.'s mother contacted law enforcement and social services, and a law enforcement officer interviewed K.C. through the "First Witness" program.

K.A.S. was charged by juvenile petition with two counts of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(a) (1996), and two counts of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(a) (1996). The petition alleged that in 1993 K.A.S. sexually penetrated and had sexual contact with K.C. The state filed a motion for certification, and the parties ultimately stipulated to Extended Juvenile Jurisdiction (EJJ).

The jury found K.A.S. guilty of one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct and found him not guilty of one count of first-degree criminal sexual conduct. At sentencing, the court concluded that it could not make a determination as to whether K.A.S. was 14 years old when he committed the offenses. The court entered convictions for one count of both first- and second-

degree criminal sexual conduct and sentenced K.A.S. under EJJ provisions to a stayed sentence of 86 months for first-degree criminal sexual conduct and a concurrent stayed sentence of 21 months for second-degree criminal sexual conduct. The court adjudicated him delinquent on both counts of second-degree criminal sexual conduct. The ordered juvenile disposition included: probation until his 21st birthday; entry into 120-day program at Arrowhead Juvenile Center; and participation in an outpatient sex offender treatment program.

## ISSUES

1. Did the district court err by entering adult convictions and imposing a stayed adult sentence pursuant to an Extended Juvenile Jurisdiction proceeding where the court could not determine whether appellant was 14 years old when the offenses occurred?

Did the district court abuse its discretion by admitting complainant's videotaped interview?

3. Did the district court abuse its discretion by admitting expert testimony by a social worker?

## ANALYSIS

### I.

■ Whether jurisdiction exists is a question of law subject to de novo review on appeal. *State v. Behl,* 564 N.W.2d 560, 563 (Minn.1997). With the exception of adult certification and certain traffic offense cases, the juvenile court has original and exclusive jurisdiction in proceedings concerning anyone under the age of 18 alleged to be delinquent. Minn.Stat. § 260.111, subd. 1 (1996). If a juvenile was age 14 to 17 at the time of the alleged offense, a proceeding may be designated an Extended Juvenile Jurisdiction (EJJ) prosecution after a certification hearing or after an EJJ hearing held at the state's request. Minn.Stat. § 260.126, subd. 1(1), (3) (1996). If a juvenile is found guilty, or pleads guilty, in an EJJ proceeding, the juvenile is given a juvenile disposition and an adult criminal sentence. Minn.Stat.

§ 260.126, subd. 4(a)(1), (2) (1996). The adult sentence is stayed on the condition that the child does not violate the terms of the juvenile disposition or commit a new offense. Minn. Stat § 270.126, subd. 4(a)(2). In this case the parties stipulated to EJJ; therefore, there was no hearing or findings regarding the appropriateness of EJJ.

K.A.S. argues that because the state did not prove that he was at least 14 years of age when the offenses occurred, the district court had no jurisdiction, and, therefore, the adult convictions and the stayed adult sentences should be vacated. Moreover, K.A.S. contends that the court had no power to allow the parties to waive the statutory threshold requirement that K.A.S. must have been 14 when the offenses occurred. The state counters that a determination that a proceeding is an EJJ is a final appealable order, that K.A.S. failed to appeal from the EJJ designation, and that he cannot now attack the validity of the designation in this proceeding. The state maintains that the EJJ designation can be considered a sufficient basis for the exercise of district court jurisdiction.

In *State v. Anderson*, 394 N.W.2d 813, 815–16 (Minn.App.1986), *review denied* (Minn. Dec. 12, 1986), this court concluded that a juvenile who waived a reference (certification) hearing could not challenge the district court's jurisdiction in an appeal from his conviction because the juvenile had failed to appeal from the adult reference order. This court reversed and remanded the conviction, however, because it could not determine whether the jury relied in part on evidence of acts committed by appellant before he reached age 14. *Id.* at 816.

In *State v. Rojas*, 569 N.W.2d 418, 419–20 (Minn.App.1997), this court reversed and remanded the district court's acceptance of appellant's guilty plea for criminal sexual conduct where the district court could not determine whether appellant was an adult when the alleged sexual conduct occurred. This court held that even though appellant had pleaded guilty to the charge, the dis-

trict court had to meet threshold statutory requirements limiting a court's jurisdiction before the district court could exercise jurisdiction. *Id.* at 420–21.

Here, although K.A.S. stipulated to EJJ, the record did not demonstrate whether K.A.S. was 13 or 14 at the time of the offense. The state points to the trial transcript arguing that there is "significant evidence" that K.A.S. was 14 years old when the incidents occurred. However, most of the testimony that the state points to only provides rough estimates as to the time of the criminal acts and the relative ages of both K.A.S. and K.C. As in *Rojas*, the district court in this case stated at sentencing, "The Court cannot make a determination that [K.A.S.] was 14 years of age when either of these offenses occurred based on the evidence at trial * * * ."

■ Appellant does contest even jurisdiction in district court, but as to the issue of jurisdiction, we find it. Similar to appellant in *Anderson* who waived his right to a certification hearing, K.A.S. waived his right to an EJJ designation hearing. Further, unlike appellant in *Rojas* who was charged as an adult, K.A.S. and appellant in *Anderson* had the opportunity to appeal from certification or EJJ designation orders. As in *Anderson*, K.A.S. did not appeal from the EJJ designation. We conclude K.A.S. cannot now assert that the district court did not have jurisdiction over his case.

■ But jurisdiction does not end the discussion of whether a district court can treat a minor as an adult when the state cannot prove the threshold requirement that the minor was age 14 when he committed an offense. We hold that the district court had jurisdiction to treat K.A.S. as a juvenile, but did not have jurisdiction to treat K.A.S. as an adult. Thus, the district court erroneously entered adult convictions and ordered stayed adult sentences against K.A.S. pursuant to an EJJ proceeding.[1] Simply put, the state did not prove to the district court's satisfaction that K.A.S. was at least age 14 at the

---

1. K.A.S. argues in the alternative that the EJJ designation, the adult convictions, and stayed adult sentences should be vacated because his counsel was ineffective. Because we conclude

that the district court erred by entering adult convictions and stayed adult sentences, we need not address the ineffective assistance of counsel issue.

time of the offenses. As this court stated in *Anderson:*

> Although the district court had jurisdiction to hear the matter, *a criminal conviction cannot be based upon acts committed while appellant was under the age of fourteen.* Children under that age are incapable of committing a crime.

394 N.W.2d at 816 (citations omitted) (emphasis added);[2] *see also* Minn.Stat. § 609.055, subd. 1 (1996) ("Children under the age of 14 years are incapable of committing crime."). We reverse the adult convictions and vacate the stayed adult sentences. We uphold the juvenile delinquency adjudication. Accordingly, K.A.S. can be on probation until he turns 19, but not until age 21 as determined by the district court. *See* Minn. Stat. § 260.181 subd. 4 (1996) (stating juvenile adjudicated delinquent is, with limited exceptions, only subject to court's jurisdiction until age 19). All other conditions of the district court's juvenile disposition are affirmed.

## II.

K.A.S. also argues that the district court erred in making certain evidentiary rulings. Therefore, he asserts his adult convictions and juvenile adjudications should be reversed and his stayed adult sentences and juvenile disposition should be vacated.

First, a district court generally has broad authority in making evidentiary rulings. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989). A reviewing court will reverse only where the district court's ruling constitutes a clear abuse of discretion. *Id.*

### A. Videotaped Statement

K.A.S. challenges the district court's decision to allow into evidence complainant K.C.'s videotaped interview with police. Over the defense's objection, the district court allowed the jury to view K.C.'s videotaped interview with police, which was made through the "First Witness" program. The record appears to indicate that the district court concluded that the videotape was admissible as a prior consistent statement.

Minn. R. Evid. 801(d)(1)(B) provides that a statement is not hearsay and is admissible as substantive evidence under the following conditions:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness * * *.

Prior to the admission of a consistent statement

> the witness' credibility must have been challenged, and the statement must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged.

*State v. Nunn,* 561 N.W.2d 902, 909 (Minn. 1997).

K.A.S. asserts that the videotape was not consistent with K.C.'s trial testimony and that it is mainly about what happened between K.C. and K.A.S.'s brother. K.A.S. maintains that recounting his brother's actions against K.C. was not relevant to K.A.S's trial and was prejudicial, especially because they are brothers. In addition, K.A.S. argues that the videotape was not a prior consistent statement because it was much more detailed than K.C.'s trial testimony, took over an hour to complete, and contained significant facts that she did not testify to at trial. Moreover, K.A.S. argues that the district court's ruling was not harmless error.

The state asserts that K.A.S. never objected to the admission of the tape based on the statements regarding his brother or sought to have references to his brother deleted from it. In fact, the state points to many references in the record where the defense repeatedly inquired into the allegations

---

**2.** We recognize that the supreme court's decision in *State v. Shamp,* 427 N.W.2d 228, 230 n. 3 (Minn.1988), questioned reliance on the portion of this court's holding in *Anderson* addressing whether a defendant can be convicted based on a jury's consideration of acts committed before and after the defendant turned 14. Here, however, the state did not prove, and the district court did not determine, whether *any* of the acts K.A.S. committed occurred after he reached age 14.

against K.A.S's brother and even inquired if K.C. confused the two brothers. The state also notes that in the pretrial motion in limine K.A.S. did not seek to exclude or limit those portions of the videotape referring to K.A.S.'s brother. Therefore, the state argues, K.A.S.'s apparent strategy included inquiring into K.C.'s possible confusion between K.A.S. and his brother. Moreover, the state contends the evidence regarding K.A.S.'s brother's actions was relevant and corroborated K.C.'s initial statements to her mother and law enforcement and her trial testimony and because K.A.S. did not oppose admitting that evidence, its admission did not constitute clear and prejudicial error.

■ The videotape did contain serious allegations of sexual misconduct by K.A.S.'s brother. It is a close question as to whether the videotape was impermissibly prejudicial. K.C. did testify at trial, however, and was subject to cross-examination. Further, the videotaped statement was reasonably consistent with K.C.'s trial testimony. It may have assisted the jury in judging her credibility. We conclude that pursuant to Minn. Rule Evid. 801(d)(1)(B), the district court did not commit reversible error by admitting the videotape.[3]

### B. Expert Testimony

Over the defense's objection, the district court allowed a social worker to testify at trial. K.A.S. argues that the district court erred in admitting this evidence because the testimony was not helpful to the jury. K.A.S. also argues that because at the time of the expert testimony K.C. had not yet been found to be sexually abused, the social worker's testimony about how abused children behave could only have confused the jury and caused them to give K.C.'s testimony greater credibility. K.A.S. asserts that because K.C. failed to report the incident for several years and provided inconsistent versions of it in her videotaped interview and trial testimony, expert testimony explaining

these inconsistencies affected the jury's verdict

■ Minn. R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Expert testimony is generally admissible if: "(1) it assists the trier of fact, (2) it has a reasonable basis, (3) it is relevant, and (4) its probative value outweighs its potential for prejudice." *State v. Jensen*, 482 N.W.2d 238, 239 (Minn.App.1992), *review denied* (Minn. May 15, 1992). Although the supreme court has refused "to establish a categorical rule that expert testimony concerning all characteristics typically displayed by adolescent sexual abuse victims is admissible," the supreme court has upheld the admission of expert testimony regarding the behavior characteristics often displayed by child sexual assault victims. *State v. Hall*, 406 N.W.2d 503, 505 (Minn.1987); *see also State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984) (holding admission of expert testimony not erroneous where expert described typical traits and characteristics of sexually abused children); *State v. Garden*, 404 N.W.2d 912, 916 (Minn.App.1987) (determining district court did not abuse discretion by permitting psychologist's testimony about "emotional and psychological characteristics commonly observed in sexually abused children"), *review denied* (Minn. June 25, 1987).

Here, the expert primarily testified about common emotional and behavioral characteristics exhibited by children who have been sexually abused. The expert also testified about the disclosure process of sexually abused children. The expert did not give an opinion as to whether K.C. had been sexually abused.

■ Once again, whether the expert testimony was admissible is a close issue. But

---

**3.** The state also asserts that the videotape was admissible because it met the criteria in Minn. R. Evid. 803(24), which provides that when a declarant is available as a witness, a statement not specifically covered by any of the other hearsay exceptions, may be admitted under certain circumstances. We need not address this issue because we conclude the videotape was admissible as a prior consistent statement under Minn. R. Evid. 801(d)(1)(B).

we conclude the district court did not abuse its discretion by admitting the evidence. The testimony probably assisted the jury in understanding the evidence, and at least some of the testimony was relevant and had a reasonable basis in fact. But we repeat that the admissibility was close, and the impermissibility of the prejudicial value approached the probative. Looking at the trial as a whole, we conclude that the interests of justice do not mandate a new trial solely on the issue of juvenile delinquency.

## DECISION

When the district court specifically found that it could not determine whether K.A.S. was at least age 14 at the time of the offenses for which he was convicted in an EJJ proceeding, the district court erred in entering adult convictions and stayed adult sentences against K.A.S. The district court did not commit reversible error by admitting into evidence at trial a videotaped statement and expert testimony by a social worker. We affirm the juvenile adjudication and disposition. We reverse the adult convictions, and we vacate the stayed adult sentences.

**Affirmed in part and reversed in part; sentence vacated.**