**STATE of Minnesota, Respondent,**

v.

**Oliver Asher BRANCH, III, Appellant.**

**No. C0–88–985.**

Court of Appeals of Minnesota.

Nov. 22, 1988.

Hubert H. Humphrey, III, Atty. Gen., Douglas Meslow, Paul T. Ostrow, St. Paul, for respondent.

Patrick J. Fugina, Asst. Anoka County Public Defender, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE,* JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Appellant Oliver Asher Branch, III, was sentenced for driving after suspension of his license. His sentence included a $340 fine and a 30–day sentence, stayed. Branch appeals the revocation of the stay.

## FACTS

On July 9, 1987, a jury found appellant Oliver Asher Branch, III, then 31 years old, guilty of driving after suspension of his driver's license. The trial court sentenced Branch to 30 days in jail and a $340 fine. The jail sentence was stayed for one year provided that Branch receive no further driving violations for one year and that Branch pay the fine. The trial court asked whether Branch could pay the fine that day. Branch requested some time. The trial court gave Branch 60 days to pay the fine. The trial court also warned Branch that if he failed to pay the fine or failed to appear to explain why he had not paid the fine, a warrant would be issued.

Branch was to make his payment by September 9, 1987 or if unable to pay, appear in court on September 10, 1987 to explain his failure to pay. Branch appeared on September 14, 1987, explained to

the trial court that he was unemployed and received an additional month to pay his fine. Branch did not pay the fine by October 14, nor did he appear to explain his failure to pay.

On April 28, 1988, a revocation hearing was held at which Branch was represented by an attorney. At the hearing, Branch admitted to failing to pay the fine. His attorney informed the court that Branch did not currently or previously have the ability to pay the fine. Branch had apparently been jobless since an automobile accident in January 1986 which left him unable to work. Branch's attorney indicated that Branch's condition is improving and he could soon return to work. Counsel also noted that he had discussed the possibility of community work with Branch. The trial court did not respond to the suggestion of community work as an alternative to imprisonment.

At the revocation hearing, Branch told the court:

> Your honor, prior to the accident in January I was gainfully employed and owned a home and a nice car. And since then my home has been foreclosed on me and the car has been repossessed, and a lot of other bills and lawsuits that I haven't been able to pay simply because I haven't been working.

The state told the court that:

> Mr. Branch is a bad actor. I have had problems with him for a significant period of time. * * * I don't feel this is an appropriate case for leniency.

Finally, the following conversation occurred between Branch's attorney and the court:

> P.D.: I don't feel it's appropriate to put a man in jail for his inability to pay a fine, and I don't know of any showing that he's able to pay the fine.
> Court: Well, he was given some time to pay the fine in 1987, then he was given some more time to pay the fine in 1987. He didn't show even after his last deadline, and the Court has no alternative but to execute the sentence.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## ISSUE

Did the trial court abuse its discretion by revoking the stay of sentence without a finding that appellant Branch was able to pay the fine and willfully refused to do so?

## ANALYSIS

The trial court has great discretion when deciding whether to revoke a stay of sentence and shall be reversed only upon a finding of clear abuse of discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980).

The trial court may revoke a stay of execution of sentence if a defendant has violated the conditions of the stay. Minn. Stat. § 609.14, subd. 1 (1986). Subsequent to the revocation, the court may:

(1) If imposition of sentence was previously stayed, again stay sentence or impose sentence and stay the execution thereof, and in either event place the defendant on probation or order noninstitutional sanctions pursuant to section 609.135, or impose sentence and order execution thereof; or

(2) If sentence was previously imposed and execution thereof stayed, continue such stay and place the defendant on probation or order noninstitutional sanctions in accordance with the provisions of section 609.135, or order execution of the sentence previously imposed.

Minn.Stat. § 609.14, subd. 3 (1986).

The trial court must follow a three-step analysis in making its decision to revoke a stay. It must:

1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation.

*Austin*, 295 N.W.2d at 250.

The U.S. Supreme Court has ruled on the appropriateness of the revocation of probation when the defendant is unable to pay. In *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), defendant did not complete his restitution within the requisite four months. Defendant was laid off from his job and being unable to read, had difficulty finding other employment. The record indicated he had no income or assets. Defendant's probation was revoked for failure to make restitution payments. The Court held:

[A] sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation * * * If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment.

*Bearden*, 461 U.S. at 672, 103 S.Ct. at 2072.

This court faced a similar fact situation in a case in which the appellant was to pay $26,500 restitution over a five-year period. *State v. Fritsche*, 402 N.W.2d 197 (Minn.Ct. App.1987). Appellant paid $3000 during the five years. The trial court asked appellant why he had not made all the payments and the appellant responded that he could not make those payments. The trial court revoked probation, sentenced appellant to five years and stayed execution. This court reversed the trial court and said:

Appellant's verbal report to the court suggested he was unable to pay more than he paid, and this position was not refuted. The State neither claimed nor showed that appellant willfully missed payments.

*Fritsche*, 402 N.W.2d at 201. Further, this court said that missed payments justify revocation only in cases of willful failure to pay or failure to attempt to pay. *Id.* This court remanded for resentencing.

In the present case, both Branch and his attorney informed the court that Branch had no ability to pay his fine. Additionally, Branch qualified for a public defender. Branch's testimony that he was unemployed was not contradicted. The Blaine city attorney offered no evidence that Branch was employed or had the ability to pay the fine. The attorney only claimed that Branch "is a bad actor."

The trial court made no finding regarding Branch's ability to pay. Branch was a frequent offender for whom a jail sentence may have been appropriate. However, the trial court may not revoke its stay without an express finding that Branch was capable of paying the fine and willfully refused to do so.

It appears that the court may have revoked the stayed sentence based on the fact that Branch failed to appear and to offer an explanation as to why the fine was not paid. However, the record indicates that the court based its revocation solely on the nonpayment.

### DECISION
This case is remanded to the trial court for a finding on Branch's ability to pay his fine.

REMANDED.